Good morning. May it please the court. Erica Bailey Drake here today on behalf of Carol Ann Luther, Plaintiff Appellant. I'm going to do my best to reserve two minutes for rebuttal if I may. Ms. Luther seeks to have the unfavorable Social Security decision reversed and remanded pursuant to sentence four. Specifically she'd either like it reversed with instructions to calculate benefits or a remand for further hearing. In support of this position we contend that the administrative law judge erred in three specific ways. The first error pertains to Ms. Luther's VA disability rating. Ms. Luther was afforded a 100% VA disability rating effective in December 2012. The basis of that rating was 100% attributed to post-traumatic stress disorder and that was due to military sexual trauma. She was granted an additional 30% for a genitourinary impairment and she was granted an additional 10% due to a service-connected back injury. Within the administrative... What extent do you think that the Appeals Council discussion of the disability rating cures any concern that you've raised with regard to the adequacy of the ALJ's consideration of the VA rating? It's our contention that the Appeals Council's refutation of the rating actually has no merit here and really no place here because unfortunately because the Appeals Council denial states it denied the request for review it did not accept jurisdiction which effectively makes that decision unreviewable and that's pursuant to 20 CFR 404.981. In addition what the Appeals Council said was also insufficient to really evaluate the VA rating because as I indicated the VA rating has three major components not only the PTSD due to military sexual trauma but also the genitourinary impairment and that's an impairment that the ALJ entirely missed. She was aware of it because at the time of the hearing prior administrative counsel told the ALJ that in fact there was this VA rating it was a 100% PTSD, 30% genitourinary and 10% back impairment but on the record the ALJ said VA 100% VA disability rating has no bearing. It's something we consider. So it's apparent from the record that unfortunately the ALJ didn't really understand the legal standard for evaluating VA disability ratings in the Social Security context. Or he or she I don't know which say verbally though not in his opinion something to the effect of really doesn't matter what the VA said. That's exactly what she said. That was exactly the sentiment that was on the record. Again I wasn't there so I don't really know. I can only glean the context from the transcript but the takeaway is she did not understand what the purpose of the VA disability rating is in the Social Security context and in fact that the legal standard is ordinarily an ALJ must grant that VA rating great weight unless persuasive specific valid reasons that are given. You want this to go back to the back to the ALJ to re-evaluate Dr. Flynn's evaluation? Effectively because Dr. Flynn's medical source statement was incorporated into a hypothetical to the vocational expert it's not necessary. Do we have do we have the full records from the VA? Is this is this everything we've got is Dr. Flynn's evaluation? Is that the basis for the 100% disability finding is Dr. Flynn's check the box? No no the basis of the VA disability rating is in the file it's at exhibit 12d of the administrative law judges decision and within that document it specifies exactly what the VA considered in arriving at the VA rating decision. Wasn't there some additional paperwork that came before the Appeals Council that was not before the ALJ? You're missing like three pages right? Precisely three pages were missing however the part of the of the rating that specified exactly what the VA considered in arriving at its conclusions was there. Basically the evidentiary list their exhibit list. So my question is is if we send this back to the ALJ we don't really have anything else to put before the ALJ and we can tell them that they're wrong but we don't have any additional information that's going to expound on what Dr. Flynn saw? No no you don't because in addition there is the report from Ms. Shapiro. Ms. Shapiro was the licensed social worker who was treating Ms. Luther. But Dr. Flynn was he at the VA? Yes and he not only works at one VA he's actually the treating psychiatrist for veterans suffering from PTSD all over the state. You can kind of glean that from his letterhead. In other words the VA people I don't know this but possibly the VA people who made the decision had some particular reason to be relying on him when she was a person they presumably dealt with regularly. Absolutely and so in terms of evaluating his opinion they're in a better position to deal with in this ALJ. I've probably never heard of him before. Certainly and certainly the VA is going to be in a much better position to evaluate military sexual trauma and the impact that that's going to have on functional limitations in the workplace than an ALJ who did not even reference the fact that the PTSD was due to military sexual trauma. In evaluating Dr. Flynn's opinions unfortunately the administrative law judge did not note the fact that he was highly specialized. Did not acknowledge how many times Dr. Flynn had actually treated Ms. Luther. How many times had he treated her? That is somewhat up for debate. Well how could the ALJ deal with this if it's still somewhat up for debate? It's somewhat up for debate because on the medical source statement you may see on the first page it says treated her for 18 months and it's hard to tell if it says two visits or 20 visits. Presumably it's 20 because even if he didn't treat her 20 times he probably reviewed the records from Ms. Shapiro because the two of them were acting in conjunction to treat Ms. Luther. But there's no 20 pages of records. Right but but even if he had only treated her two times because of his specialization because of the fact that he is more highly skilled in dealing with veterans and also their psychiatric needs he should have been given deference. He should have been given weight as a treating physician. What do we do with Dr. Goodman's report? Dr. Goodman's report appears to be the most comprehensive evaluation of her and at page 370 of the record that's page 21 of Dr. Goodman's report he acknowledges the the psychiatrist the Veterans Administration is diagnosed with a post-traumatic stress disorder due to this assault. I believe this has allowed Ms. Luther to receive psychotherapy through the Veterans Administration. Then two paragraphs later he says Ms. Luther is currently temporary partially disabled psychiatrically. She is barely in this category. Now I'm not sure what barely in this category means. Is she just barely temporarily disabled or is or is she on the verge of being permanently disabled? That is that she's about to move out of out of partially disabled into permanently disabled. Right and and I think part part of the problem with Dr. Goodman's evaluation is he was had after she had left left the service she had worked for a law firm and while she was working at that law firm she was subjected to pretty horrific abuse and so that was the basis of the workers compensation claim. So Dr. Goodman may have been struggling with how much of the disability do I attribute to her childhood abuse her veteran abuse and also to this workers compensation abuse. But all he has to do is just get to is just get to the point of saying PTSD whatever the source is whether it's attributable to the VA service or not that might have been the restriction on Dr. Flynn but it's certainly not a restriction on Dr. Goodman. No. And he says she's in need of psychological and psychiatric treatment to reach maximum medical improvement. So I it's here I mean the most discerning review we have in the record is Dr. Goodman and he doesn't seem to be willing to give full deference to the VA's findings on this. He seems somewhat skeptical of this. He may not have had the benefit of Dr. Shapiro's later statement that she had as well which which showed that many years many years later at least a year and a half later she was still really grappling with the effect. I don't I don't know what what good it would have done him to have had the report we have from Dr. Flynn because it's really just very conclusory. The check the boxes is really not a very helpful thing. Although Dr. Dr. Flynn does say he does make some comments on the medical source statement and also the records underlying his initial visit with Ms. Luther were within the were within the administrative. Yes yes and at that time he noted that during the interview with her she was just show dissociating when she was discussed the traumatic events that she had witnessed. So you know one thing that we can say about each of the psychiatric or psychological medical opinions that are within this file they all intersect someplace. They all intersect to say that she had a poor prognosis. Dr. G Giaro whom the administrative law judge credited who is the consultative examining physician in this case she said that the likelihood that Ms. Luther would recover from PTSD was poor. Additionally she noted that she would have difficulty with stress in the workplace. She would have difficulty attending a regular work week or a It's also significant because although the administrative law judge credited that opinion she did not incorporate those particular limitations into her residual functional capacity. One thing she says is that the that Carol Luther was going to counseling originally twice a week and now once a week. We don't know who was that. That was with Ms. Shapiro. Yes and her was discounted because she wasn't a medical person and because she was relying on subjective complaints. But of course for a psychiatrist, for a therapist you're always relying on subjective complaints. Well those were the two rationale provided by the ALJ. As an other source yes the ALJ is required to give germane reasons and it's our contention that that was not a germane reason because in in effect Ms. Shapiro's report that she provided was pretty exhaustive and she stated that what she was basing it upon was what she observed during the time she examined Ms. Shapiro and she's perfectly within her right to make statements about the severity of Ms. Luther's impairments along with her functional limitations. I see my time has expired. Thank you. I apologize. Thank you very much. Good morning, your honors. May it please the court. My name is Tina Neiker. I'm appearing on behalf of the Acting Commissioner of Social Security, Nancy A. Berryhill. I wanted to address claimant's argument. Sorry, I can't hear you. I'm sorry. Can you speak into the mic? I wanted to address a claimant's or appellant's arguments regarding the VA rating. We believe that the ALJ properly considered the VA rating in its decision. The ALJ referenced it on page 26, noting that it's... He noted its existence but he didn't do anything. He didn't explain why he was disagreeing with it. Well if you look at the the substance of the decision and the standard of review here is whether the ALJ's decision is based upon substantial evidence and the the ALJ's decision is replete with references to the VA records. We know the ALJ gave great weight or started from that presumption and then decided not to. Do we just have to infer that? I think you can infer that from the ALJ's decision because of the the specific references to the record regarding the VA report. What about the fact that she said at the outset that he didn't think it was of any importance? That it has no bearing and that refers to the agency's regulations regarding that another federal agency regarding the VA is not binding upon the SSA. Having no relevance, what phrase did you use? I believe the ALJ said it has no bearing. But it does have a bearing. He's wrong about that. The VA rating in and of itself is not binding to the SSA. It's not binding but that's different. There's a difference between has no bearing and is not binding. Yes, Your Honor. The fact that he then didn't say anything about it in his report other than it existed, the sensible inference is that he was carrying out his notion that it had no bearing rather than implicitly and without telling us, discounting it for some specific reason. That he didn't tell us what it was. Again, Your Honor, I think that the ALJ was referring to the statute regarding that it's not binding upon the agency. If you look at the hearing transcript, the ALJ did leave the record open for 45 days in order for the claimant to submit additional evidence, which they did, that the ALJ then considered, which is Exhibit 20F. I can get you the exact page numbers. Ultimately, the ALJ did consider the VA records. There's nothing in... Did he do anything in his report other than note its existence? In the decision itself? In the decision itself, he did note it and in the hearing he did discuss it and he left the record open. Other than it doesn't have any bearing. On page 62 of the hearing transcript, he discussed that he was aware of it. On page 62 and 63, he recognized that the claimant amended the onset date to coincide with the VA rating. So it's not as if the ALJ wasn't aware of its existence. It's not as if the ALJ simply ignored it. Rather, that the ALJ did what it did with the medical records. And here, I don't think claimant can reasonably argue that there was any prejudicial error because the records that the ALJ reviewed included not only the record before the VA, but it also included an additional time period that was after, and it includes state agency opinions, consultative opinions, and the QMA, which was also not before the VA. So I think the ALJ's decision is supported based upon substantial evidence because it included not only what was... Did the ALJ resolve any questions as to how many times Dr. Flynn had seen the claimant? I believe the ALJ's decision references his very... The brief 2013 letter, but then there's the 2014, which says he treated over a course of 18 months, and then we have this question as to whether we have two visits or 20 visits. It might make a difference. Yes, and I think the ALJ noted in its decision that Dr. Flynn's medical source statement was a bit conclusory. It is conclusory, but if he had seen her 20 times over the course of 18 months, that might affect the ALJ's decision as to about what Dr. Flynn thinks, right? Again, I don't think that's in the record, Your Honor. Was Ms. Shapiro, was she also at the VA? I believe so. She was with the VA. And Dr. Flynn was apparently a chief honcho on PTSD. Is that in the record? I'm sorry? In the record what his role was at the VA. Yes, Dr. Flynn was with the VA. All right. So whether or not he saw her 20 times, we know that she was seen by the VA therapists weekly or bi-weekly. It looked like she was seen bi-weekly for a moment, and then Dr. Flynn, I mean, this may be surmised, but it appears to me likely that he had, he knew, or I don't know if he had any role supervising, but he knew that she'd been seen at the VA regularly for quite a while. Correct, but there isn't any statement, there isn't any treatment records that would actually support Dr. Flynn's treatment records that we do have. What I'm asking is, does it have to be his treatment records, or could it be the VA's treatment records in general, including Ms. Shapiro? Again, if you look at the VA treatment records, there's nothing in those treatment records that I would assume that would support Dr. Flynn's conclusory statements. Not Ms. Shapiro's letter? No, Ms. Shapiro's statements were highly, highly adopted. Of course they were subjective, because any psychiatric evaluation, if somebody has, if she's met with this person for every two weeks for, I don't know, for how long? A year or two? I don't know how long. Here's since 2010 is what... Right, so a really long time. And if you're going to discount a therapist's opinions for being based on the subjective self-reporting, then none of them are worth anything, ever. I think you have to look at... Well, under the agency's regulations, you not only have to look at the subjective reporting, but you have to also look at the medical records and the treatment records to corroborate those types of symptoms. So if Ms. Luther had symptoms of flashbacks and was unavailable to interact socially, Dr. Giero found that she had only mild limitations in those areas. Dr. Giero... How long did he talk to her? For an hour? Yes, Your Honor. So as between somebody who's seen her every two weeks for several years and somebody who's seen her for an hour, why would you believe the person has seen her for an hour? Because there's just nothing in the record to corroborate Ms. Shapiro's assessment, other than claimant's own subjective reporting. The Social Security report, is that correct? It's my understanding... 2014? I'm not aware. 2017. And I believe it was because of a change in age category. Ultimately, we believe that the VA rating was... Let me go on about Ms. Shapiro. Okay. You say there's nothing corroborating it. She says that Ms. Shapiro re-experienced. She experiences frequent flashbacks. These include anxiety, heart pounding, shaking, etc. These symptoms have been exhibited during her individual counseling sessions. So she says, I saw it. That's what she says in this letter, Your Honor, but I don't see anything in the actual VA records that support that. Claimant has not even identified those records, so it's unclear where she's getting these statements from. But again, this is somebody who's seen her every two weeks for years, and they did believe a person who saw her for one hour. There is just no support for that. What support did that person have? If you look at the treatment records that was submitted for the VA, I don't see any support by Ms. Shapiro regarding these observations that she had, she said that she saw. And that's what the ALJ is relying upon. These conclusory statements are not supported by the record. And in addition, that she is an other source, and it's unclear where she saw Ms. Luther with these types of symptoms, or when, Your Honor. It's very unclear as to the timing as well. And therefore, you just believe her, but you believe somebody who's seen her for an hour? We believe that the ALJ looked at the record as a whole, considered all of the statements from the several doctors. And if you look at the different psychiatric evaluations, I mean, even if you look at Dr. Flynn's statement on page 451, Dr. Flynn discusses that the plaintiff could still remember and understand short, and was only limited in her ability to understand short and simple instructions, which is consistent with the RFC finding. So even if you look at Dr. Flynn's statement, which is very conclusory and not supported by the record, at most, you could still find that the ALJ's decision was supported by substantial evidence with respect to the PTSD and the RFC for simple and routine work. Okay. Thank you, Your Honor. I just want to rebut and say that no reason is not a persuasive, specific, valid reason supported by the record, and the ALJ did not give any reason here. Additionally, under the garrison criteria, we believe that any of the three sources of error, if the insufficiently credited evidence were credited, Ms. Luther would be entitled to a finding of disability. There can be no serious doubts that she's disabled. Two separate federal agencies have now found her disabled, both the VA as well as Social Security Administration. Thank you very much. Thank you. I thank both of you for your time. This hearing is adjourned.
judges: Berzon, Bybee, Gleason